TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00591-CV






The Butler Weldments Corporation and Bryan Construction Company, Appellants



v.



Liberty Mutual Insurance Company, et al., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 98-01932, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







 Appellants Butler Weldments Corporation ("Butler") and Bryan Construction
Company ("Bryan") sued appellees, a defendant class of workers' compensation insurance
carriers (1) (the "Insurers") including Liberty Mutual Insurance Company ("Liberty") and Highlands
Insurance Company ("Highlands") on several grounds, alleging that the Insurers had wrongfully
withheld monies due them for years 1993 and 1994 and demanding that the Insurers pay them
interest on those retained amounts. The sole issue presented on appeal is whether the trial court
erred in granting the Insurers' special exceptions to Butler and Bryan's pleadings and in
dismissing the claims with prejudice after ruling that Butler and Bryan had failed to plead a
cognizable cause of action. Finding no error, we will affirm the district court's judgment.



FACTUAL AND PROCEDURAL BACKGROUND

 Under the Texas Workers' Compensation Act, an employer may obtain workers'
compensation insurance coverage through a licensed insurance company or, in certain instances,
through self-insurance. See Tex. Labor Code Ann. § 406.003 (West 1996). Many employers
who are unable to purchase insurance in the private voluntary market also are ineligible to self-insure. Since 1953, the Texas legislature has prescribed a variety of "residual" or "involuntary"
market mechanisms to afford coverage to these "rejected risks," i.e., those employers unable to
obtain workers' compensation insurance through ordinary methods in the voluntary market. See
Act of April 9, 1953, 53d Leg., R.S., ch. 279, 1953 Tex. Gen. Laws 716 (Tex. Ins. Code Ann.
art. 5.76-1, since repealed by Act of Nov. 21, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01, 1989
Tex. Gen. Laws 114). Until the 1989 legislative session, this coverage was provided by the Texas
Workers' Compensation Assigned Risk Pool (the "Pool"). Id. In 1989, the legislature replaced
the Pool with the Texas Workers' Compensation Insurance Facility (2) (the "Facility"). See Act of
Nov. 21, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01, 1989 Tex. Gen. Laws 114 (amended by Act
of Aug. 22, 1991, 72d Leg., 2d C.S., ch.12, § 18.01, 1991 Tex. Gen. Laws 337, eff. Jan. 1
1994, currently codified at Tex. Ins. Code Ann. art. 5.76-3 (West Supp. 1999)). All insurance
companies licensed to write workers' compensation insurance in Texas were required to join the
Facility. As members, the insurance companies were made financially responsible for the
Facility's operational deficits and surpluses each year. See Tex. Ins. Code Ann. art. 5.76-2,
§ 1.01 (amended 1991) (currently codified at Tex. Ins. Code Ann. art. 5.76-3 (West Supp. 1999)). 
For any year in which the Facility operated at a deficit, the deficit amount was to be assessed
against all Facility member insurance carriers; conversely, for any year in which the Facility
operated at a surplus, the surplus amount was to be rebated among all Facility members.

 Also in 1989, the legislature enacted a provision whereby the members of the
Facility would pass a portion of the Facility's annual deficits or surpluses on to their insureds who
had purchased "retrospectively-rated" policies (3) of workers' compensation insurance in the
voluntary market for that particular year. See Act of Nov. 21, 1989, 71st Leg., 2d C.S., ch.1,
§ 16.01, 1989 Tex. Gen. Laws 114 (amended 1991). In order to provide a means of calculating
the amount to be assessed against or paid to each eligible policyholder, the Texas Department of
Insurance (the "Department") was given the duty of setting the appropriate "pass-through
allowance" for each year. See Tex. Ins. Code Ann. art. 5.76-2, § 4.04(d),(e) (amended 1991). 
This allowance was to be based upon the premium paid by the retrospectively-rated policyholder
as a proportion of the total voluntary writings by the insurance carriers for the calendar year. See
id.

 The material facts in the case before us are undisputed. Butler purchased a
workers' compensation insurance policy from Liberty to cover its Texas employees for the period
beginning January 1, 1993, and ending December 31, 1993. Bryan purchased a workers'
compensation insurance policy from Highlands to cover its Texas employees for the period
beginning June 30, 1993, and ending June 30, 1994. Both policies were written on a
retrospectively-rated basis. Both Liberty and Highlands were Facility members.

 In 1991, the Facility produced a surplus for the first time in nearly thirty-five years. 
A significant surplus was also generated in 1992, 1993, and 1994. At some point, certain
policyholders petitioned the Department to adopt a rule compelling the Insurers to give each
retrospectively-rated policyholder a portion of the surplus in accordance with article 5.76-2,
section 4.04 (d) and (e) of the Insurance Code. See Tex. Ins. Code Ann. art. 5.76-2, § 4.04(d),
(e) (amended 1991). (4) The Department commenced rulemaking proceedings pursuant to these
requests on March 10, 1997, and invited participation by all interested parties, including Butler,
Bryan, and all other retrospectively-rated policyholders. Notwithstanding the ongoing rulemaking
proceedings, Butler and Bryan filed suit in Milam County on March 31, 1997, against Liberty,
Highlands, and the other members of the Facility.

 In their suit against the Insurers, Butler and Bryan sought, both in their individual
capacities and on behalf of a proposed class of policyholders, judgment for their share of the 1993
and 1994 surpluses. In July 1997, the Department issued a rule establishing the appropriate pass-through allowances for each of the surplus years and ordering the Insurers to remit a designated
portion of the 1993 and 1994 surpluses to Butler, Bryan, and the other eligible policyholders
within 180 days of the rule's effective date. Despite the protests of Butler, Bryan, and the other
policyholders, the Department refused to order as part of the distribution the payment of interest
that had accrued on the surplus while the funds were in the possession of the Insurers.

 After the Insurers complied with the Department's order to disburse the surplus,
Butler and Bryan accepted the surplus rebates and abandoned their claims for the pass-through
amounts. However, they amended their petition to seek recovery of the interest that had accrued
on the surplus amounts from the time the Facility rebated the surpluses to the Insurers until the
Insurers disbursed the surplus to the policyholders pursuant to the Department's 1997 order. 
Upon agreement of all the parties, the cause was transferred to Travis County where it was
consolidated with a related suit and then later severed. Liberty, Highlands, and the Insurers filed
special exceptions asking the court to strike Butler and Bryan's pleadings for failure to state a
cause of action. The court granted the special exceptions and ordered Butler and Bryan to
replead. After Butler and Bryan amended their pleadings, Liberty, Highlands, and the Insurers
once more specially excepted to each of Butler and Bryan's causes of action. (5) Again, the district
court granted the special exceptions, and this time dismissed all of Butler and Bryan's claims with
prejudice in its final judgment in September 1998. Butler and Bryan now appeal the court's final
judgment.

STANDARD OF REVIEW

 By way of their special exceptions, the Insurers sought dismissal of the suit on the
grounds that Butler and Bryan failed to state a cognizable cause of action under Texas law. A
special exception is a proper method to use to determine whether a plaintiff has pleaded a cause
of action. See Intratex Gas Co. v. Beeson, 960 S.W. 2d 389, 394 (Tex. App.--Houston [1st Dist.]
1998, pet. denied); see also Moseley v. Hernandez, 797 S.W.2d 240, 242 (Tex. App.--Corpus
Christi 1990, no writ). When special exceptions are sustained, the pleader may either amend the
petition or refuse to amend and challenge the ruling on appeal. See Detenbeck v. Koester, 886
S.W.2d 477, 479 (Tex. App.--Houston [1st Dist.] 1994, no writ). Here, the trial court provided
Butler and Bryan two weeks leave to amend their petition. Consequently, Butler and Bryan were
afforded adequate opportunity to correct any deficiencies that may have existed in their pleadings. 
See Albright v. Texas Dep't of Human Servs., 859 S.W.2d 575, 582 (Tex. App.--Houston [1st
Dist.] 1993, no writ) (citing Texas Dep't of Corrections v. Herring, 513 S.W.2d 6, 8 (Tex. 1974))
(holding that only after a party has been given an opportunity to amend after special exceptions
have been sustained may a case be dismissed for failure to state a cause of action).

 When a trial court dismisses a case upon special exceptions for failure to state a
cause of action, we review that issue of law using a de novo standard of review. See Mayberry
v. Texas Dep't of Agric., 948 S.W.2d 312, 314 (Tex. App.--Austin 1997, pet. denied) (citing
Detenbeck v. Koester, 886 S.W.2d at 479); see also Sanchez v. Huntsville Indep. Sch. Dist., 844
S.W.2d 286, 288 (Tex. App.--Houston [1st Dist.] 1992, no writ). When reviewing a dismissal
based upon special exceptions, we also must accept as true all material factual allegations and all
factual statements reasonably inferred from the allegations set forth in the respondent's pleadings. 
See Sorokolit v. Rhodes, 889 S.W.2d 239, 240 (Tex. 1994). If a pleading does not state a cause
of action, the trial court does not err in dismissing the entire case. See Holt v. Reprod. Servs.,
Inc., 946 S.W.2d 602, 605 (Tex. App.--Corpus Christi 1997, writ denied); Cole v. Hall, 864
S.W.2d 563, 566 (Tex. App.--Dallas 1993, writ denied).


DISCUSSION

 We do not decide today whether an insurance company would be liable in the event
it were to intentionally violate the Department's order to disburse pass-through allowances to its
eligible insureds pursuant to article 5.76-2, section 4.04 of the Texas Insurance Code. See Tex.
Ins. Code Ann. art. 5.76-2, § 4.04 (amended 1991). Rather, the issue before us is whether a
cause of action exists against an insurance company for delaying payment of Facility surplus
amounts to eligible policyholders until the Department sets the appropriate pass-through allowance
to be paid for each calendar year as authorized by statute. See Tex. Ins. Code Ann. art. 5.76-2,
§ 4.04 (d),(e) (amended 1991).

 Each cause of action Butler and Bryan assert is premised upon the contention that
the policyholders were immediately and automatically vested with a right to a discernable share
of the Facility's annual surpluses at the moment the Insurers received it and no later. Although
Butler and Bryan's pleadings allege a variety of causes of action, they essentially claim a right to
the interest that accrued on their pass-through allowances from the time the surplus was first
rebated to the Insurers until the point at which the Department entered its order and the allowances
were finally rebated to Butler, Bryan, and the other policyholders. After considering Butler and
Bryan's arguments and reviewing the plain meaning of the statute and established rules of
statutory construction, we come to the opposite conclusion.

 We first note that it is undisputed that Liberty, Highlands, and the other Facility
insurance carriers promptly complied with the Department's July 1997 order to remit a certain
amount of the Facility surplus to each retrospectively-rated policyholder. The parties instead
disagree as to whether the Insurers should have forwarded the surplus to their eligible
policyholders immediately upon receiving it from the Facility, long before 1997, regardless of
whether the Department had calculated the appropriate "residual market factor" (6) ("RMF") for
the years in question. Butler and Bryan contend that the Insurance Code granted them a property
right to an objectively-determinable pass-through allowance for each surplus year and that this
right vested immediately upon the Insurers' receipt of any surplus from the Facility, regardless
of if and when the Department established the appropriate pass-through allowance as directed by
the legislature. See Tex. Ins. Code Ann. art. 5.76-2, § 4.04(d),(e) (amended 1991). As we will
explain, this reading misinterprets the statute.

 Both parties acknowledge that, to the extent that any right to a surplus might exist,
such a right is established solely by statute. The statutory provision at issue here unambiguously
charges the Board of the Department of Insurance (the "Board") with the duty of establishing the
appropriate pass-through allowance for each year in which the Facility operated at a surplus or
a deficit:


 For assessments or rebates made under Subsection (c) of this section, the
board shall establish an appropriate pass-through allowance so that each
retrospectively rated risk written during the calendar year shall pay a proportion
of the assessment or receive a proportion of the rebate. The pass-through
allowance shall be based on the premium paid by the retrospectively rated risk as
a proportion of the total voluntary writings by the insurance carrier or the state
fund in the calendar year.



Tex. Ins. Code Ann. art. 5.76-2, § 4.04(e) (amended 1991) (emphasis added).

 The statute's plain language indicates that Butler and Bryan possessed no vested,
enforceable property right to any surplus amount prior to the Department's 1997 order prescribing
the pass-through amounts for years 1993 and 1994. Further, the statute unambiguously dictates
that the Board, not the Insurers, shall establish an appropriate pass-through allowance. Until the
Board acted on behalf of the Department, the statute imposed no duty upon the Insurers to pay
anything to their policyholders. The Insurers could not be compelled to pay because the pass-through allowance had not yet been set. No entitlement existed. The policyholders' interest in
the pass-through allowances was only an expectation based upon the anticipated continuance of
the present laws, the existence of a Facility surplus, and the Department's expected promulgation
of the appropriate allowances. Consequently, the policyholders' claim to the surpluses was not
a ripened property right until the Department's 1997 rule and order. See Grocers Supply Co. v.
Sharp, 978 S.W.2d 638, 643 (Tex. App.--Austin 1998, pet. denied) (citing Ex Parte Abell, 613
S.W.2d 255, 261 (Tex. 1981) (holding a right is not vested unless it is something more than mere
expectation based upon continuance of present general laws)).

 Although the policyholders can look forward to the Department carrying out its
duty of calculating the pass-through allowance as directed by statute, they cannot forego the
prerequisite action by the Department. The policyholders could have opted to compel the
Department to perform its statutory duty to calculate the pass-through allowance sometime prior
to 1997. But absent any administrative action by the Department, there is no statutory or
common-law basis upon which the retrospectively-rated policyholders can hold Liberty,
Highlands, or the Insurers liable for the retention of the 1993 and 1994 surpluses.

 Even if the right had vested earlier as Butler and Bryan contend, we nevertheless
hold that the prescribed statutory remedies within the statute are exclusive and that Butler and
Bryan's causes of action would be barred. When a property right is created by statute, the
prescribed statutory remedies are exclusive and cannot be expanded by means of the common law
or a statute of general application. See Texas Catastrophe Property Ins. Ass'n v. Council of Co-Owners of Saida II Towers Condominium Ass'n, 706 S.W.2d 644, 646 (Tex. 1986); see also
Employees Retirement Sys. v. Blount, 709 S.W.2d 646, 647 (holding where a cause of action is
derived from statute, not common law, statutory provisions are mandatory, exclusive and must
be complied with in all respects). Furthermore, we note the Code provides that "[t]he pass-through allowances authorized in Subsections (d) and (e) hereof shall be deemed exclusive
subsequent to the effective date of this article." Tex. Ins. Code Ann. art. 5.76-2, § 4.04(q)
(repealed) (emphasis added). Although the provision further states that other methods utilized
prior to the effective date may be deemed valid in some circumstances, we believe that this
language nevertheless supports our holding that any property right an insured might have to a
portion of the Facility's surplus was intended to be prospectively limited in scope to the confines
of the statute. We therefore believe that, even if the policyholders' right to the allowances vested
sometime before the Department's rule and order, the remedy prescribed by the statute is
exclusive.

 Despite the statutory language directing the Department to set the appropriate
allowances, Butler and Bryan nevertheless argue that the insurance companies easily could have
and should have paid all the eligible policyholders the correct pass-through allowances anyway,
despite the Department's inaction. They contend that the statutory language necessarily prescribes
a single, uncomplicated, and self-evident formula for computing the pass-through allowances and
that the Department's inaction was of no real consequence because the duty it was to perform was
purely ministerial and non-discretionary in nature. We disagree.

 Evidence in the record indicates that there were several different elaborate formulas
available for calculating the pass-through allowance. Indeed, there was significant debate
regarding which formula was most appropriate. Even if it were true that the method for
computing the pass-through was self-evident, requiring the Insurers to act unilaterally and to
immediately compute and refund the surplus (or assess the deficit) would render meaningless the
portion of the statute directing the Department to set the appropriate pass-through allowance. This
we cannot do. It is a well-established rule of statutory construction that every word included in
a statute has a purpose and that every word excluded was excluded for a reason. See Cornyn v.
Universe Life Ins. Co., 988 S.W.2d 376, 379 (Tex. App.--Austin 1999, no pet. h.) (citing
Cameron v. Terrell & Garrett, Inc., 618 S.W.2d, 535, 540 (Tex. 1981)). Butler and Bryan urge
us to give no meaning to the words delegating to the Department the duty of setting the
appropriate allowance. We therefore reject this argument.

 Having held that there is no vested property right to Facility surplus amounts until
the Department determines and announces the applicable allowance, we now address Butler and
Bryan's contention that the Department should have nevertheless been compelled to pay the
policyholders interest on the allowances. Nothing in the statute suggests that the legislature
intended the policyholders to receive interest. As the Insurance Commissioner noted in the 1997
order, the Code does not authorize the granting of interest income on the surpluses rebated to
retrospectively-rated policyholders. See Order of Tex. Dep't Ins., Amendments to the Texas
Retrospective Rating Plan Manual, Docket No. 97-0689 (July 21, 1997); see also Tex. Ins. Code
Ann. art. 5.76-2, § 4.04(e) (amended 1991). Had the legislature intended for the Department to
include interest along with the pass-through allowances, it could have provided for such. Indeed,
where the legislature intended for interest to be a remedy elsewhere in the statute, it explicitly so
provided. (7)

 The true source of Butler and Bryan's frustration, we believe, is the Department's
four-year delay in recalculating the pass-through allowance after discovering the surplus, as well
as its refusal to order the payment of interest on those amounts. To the extent that there was any
recognizable right to compel a refund absent any action by the Department, the proper avenue for
relief was the one provided for by both the Insurance Code and the Administrative Procedure Act. 
See Tex. Ins. Code Ann. art. 1.04(a) (West Supp. 1999); Tex. Gov't Code Ann. § 2001.038
(West Supp. 1999). Butler and Bryan were free to participate in the rulemaking proceedings and
seek judicial review of the Department's rules and implementing orders. Butler and Bryan chose
not to take advantage of these procedures.


CONCLUSION

 For these reasons, we hold that insurance companies are not liable to their
retrospectively-rated policyholders for withholding Facility surplus amounts while awaiting action
by the Department as authorized under article 5.76-2, section 4.04 (d) and (e) of the Texas
Insurance Code. See Tex. Ins. Code Ann. (amended 1991). Each of Butler and Bryan's
purported causes of action is premised upon the mistaken belief that policyholders are immediately
vested with a right to a distinct share of Facility annual surpluses at the moment the Insurers
receive it from the Facility and that the Insurers are liable for any delay. As we have stated, the
amount of the allowance and the right to receive it are dependent upon the Department's action
as authorized by statute.

 Even if we accept as true all of Butler and Bryan's material factual allegations, we
still hold that Butler and Bryan failed to plead a viable cause of action upon which relief could be
granted. See Sorokolit v. Rhodes, 889 S.W.2d 239, 240 (Tex. 1994) (holding appellate court must
accept as true all material factual allegations set forth by respondent when reviewing dismissal
based on special exceptions). Because Butler and Bryan's pleadings did not state a cause of
action, the trial court did not err in dismissing the entire case. See Holt, 946 S.W.2d 602 at 605;
see also Cole, 864 S.W.2d 563 at 566.

 Accordingly, we affirm the trial court's judgment dismissing appellant's claims.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: October 7, 1999

Publish

1. The appendix to this opinion lists the appellees individually.
2. The Facility has since been replaced by the Texas Workers' Compensation Insurance Fund,
a governmental corporation that now provides workers' compensation coverage to employers in
the residual market. See Tex. Ins. Code Ann. art. 5.76-4 (West Supp. 1999).
3. Retrospectively-rated insurance policies have a variable component of premium that is
adjusted annually to reflect that particular insured's actual losses in past years.
4. It is important to note that for the thirty-five years prior to 1991, the Pool had always
operated at a deficit. Whereas the 1991 rules provided a mechanism whereby the Facility could
"pass-through" Facility deficits, the rules at that time did not address the procedure to follow in
the event the Facility ever generated a surplus. Only in 1997, after the Department realized for
the first time that there was in fact a surplus during years 1991, 1992, 1993, and 1994, were the
rules amended to address how to pass-through such unanticipated surpluses.
5. Butler and Bryan's second amended petition alleged unjust enrichment; money had and
received; constructive trust; conversion; conspiracy to breach a contract, fiduciary duties, and the
duties of good faith and fair dealing; tortious interference; usury; antitrust violations of section
15.05(a) of the Texas Business and Commerce Code. See Tex. Bus. Com. Code Ann. § 15.05(a)
(West Supp. 1999); and violation of article 21.21, section 4(1) the Texas Insurance Code. See
Tex. Ins. Code Ann. art. 21.21, § 4(1) (West 1987). The sole basis for the damages sought,
however, was the accrued interest on the 1993 and 1994 pass-through amounts.
6. The residual market factor ("RMF") was the mechanism the Department used to calculate
the pass-through allowances. The RMF was expressed as a percentage factor that was multiplied
by the premium for a particular policyholder in the applicable year in order to yield the
appropriate pass-through amount for that insured.
7. For example, section 4.04(g) explicitly permits the Department to collect interest on the
deferred assessment of Facility losses on post-1992 claims, whereas section 4.04(f) by implication
does not permit the collection of interest on the deferred assessment of Facility losses on pre-1992
claims. See Tex. Ins. Code Ann. art. 5.76-2, § 4.04(g),(h) (amended 1991).


. Code Ann. art. 1.04(a) (West Supp. 1999); Tex. Gov't Code Ann. § 2001.038
(West Supp. 1999). Butler and Bryan were free to participate in the rulemaking proceedings and
seek judicial review of the Department's rules and implementing orders. Butler and Bryan chose
not to take advantage of these procedures.


CONCLUSION

 For these reasons, we hold that insurance companies are not liable to their
retrospectively-rated policyholders for withholding Facility surplus amounts while awaiting action
by the Department as authorized under article 5.76-2, section 4.04 (d) and (e) of the Texas
Insurance Code. See Tex. Ins. Code Ann. (amended 1991). Each of Butler and Bryan's
purported causes of action is premised upon the mistaken belief that policyholders are immediately
vested with a right to a distinct share of Facility annual surpluses at the moment the Insurers
receive it from the Facility and that the Insurers are liable for any delay. As we have stated, the
amount of the allowance and the right to receive it are dependent upon the Department's action
as authorized by statute.

 Even if we accept as true all of Butler and Bryan's material factual allegations, we
still hold that Butler and Bryan failed to plead a viable cause of action upon which relief could be
granted. See Sorokolit v. Rhodes, 889 S.W.2d 239, 240 (Tex. 1994) (holding appellate court must
accept as true all m